WILLIAM J. McGRANAHAN, PETITIONER-APPELLANT, v. GENERAL MOTORS CORPORATION, LINDEN DIVISION, RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 17, 1950—Decided June 2, 1950.

Before Judges McGeehan, Colie and Eastwood.

*Mr. Clarence Talisman* argued the cause for appellant (*Mr. Solomon Golat,* on the brief; *Messrs. Talisman & Golat,* attorneys).

*Mr. Carl S. Kuebler* argued the cause for respondent (*Messrs. Carpenter, Gilmour & Dwyer,* attorneys).

The opinion of the court was delivered by

McGeehan, S. J. A. D. Petitioner appeals from a judgment of the Union County Court, in favor of the respondent, which affirmed a determination of the Workmen's Compensation Division that the petitioner had not sustained the burden of proof of accident arising out of and in the course of the employment. The petition alleged that the petitioner, thirty-five years of age, injured his back while using a grinder on April 13, 1948. The hearing was held on May 18, 1949.

The petitioner testified that he had been employed by the respondent for eight years and had been working as a metal grinder for two and a half months when he suffered the alleged injury on April 13, 1948. Prior thereto he had worked regularly and never had any difficulty in performing his work. On that day, he was doing metal grinding on hoods of Buick automobiles, of which there were about twelve to fifteen in a row. These hoods contained "bad metals." He was using a grinding machine about two and a half feet long, six inches wide and six inches high, which had an electric motor and weighed about sixty pounds. At about 10:30 A. M., while standing on a platform approximately two to three feet below the top of the hood he was working on, he started from a crouched position and pushed the grinder upward about two

and a half feet toward the center of the hood, by exerting pressure. He had to exert "particular pressure" on this occasion, and while straightening his back during this operation he got a "terrific pain" which shot across the lower part of his back. He stopped working for about ten minutes, and when the pain did not subside he notified his foreman that he "got hurt on the job and wanted to see the doctor." The foreman gave him a pass to the plant hospital. He saw the plant nurse, who took his temperature and had X-rays taken of his lumbar spine. The nurse gave him a pass home and he remained there for three days. On his return he saw the plant doctor, "explained to him what happened," was examined, and asked for a transfer to a lighter job until the pain should subside. Thereafter, he was transferred to a lighter job. He was under treatment by the plant doctor for more than a month, receiving diathermy treatments and a therapeutic belt, which he still wears. At the time of the hearing he was still doing light work and could not bend his back without "terrific pain."

The X-rays taken on April 13, 1948, showed a scoliosis of the lumbar spine and a congenital malformation of the fifth lumbar vertebra with the first sacral segment.

Doctor Kummel testified for the petitioner. He examined the petitioner on November 15, 1948, and his diagnosis was a lumbosacral sprain due to the incident related by the petitioner as having occurred on April 13, 1948. He estimated the disability at ten to twelve and a half per cent of total as a result of the sprain.

The plant nurse, a witness for the respondent, testified that she saw the petitioner on April 13, 1948, and he complained about pain across the lower rib region, right and left, and also across the lower part of his lumbar region across the belt line. She asked him whether he had any injury and he replied "No, not that I know of." She asked him, further, if he had a cold and he replied that he couldn't work because of the pain in his back and that he might have a cold but didn't know. His temperature was 99.6. She arranged to have X-rays taken of his lumbar spine.

Doctor Young, the plant doctor, testified that he first saw the petitioner on April 19, 1948. The petitioner complained of pain across the lower mid-back area and told him that the pain had started while he was on the job, but gave him "no definite history of any lifting or any real history of any injury." He found that the petitioner had pain, that forward flexion was limited, that extension of the back was slightly painful, that there was some muscular spasm and rigidity, and that petitioner's temperature was 100. He treated the petitioner until October, 1948, and during that period the petitioner's temperature remained above normal and he continued to have some muscular spasm and rigidity. He was unable to determine the etiology of the fever. He stated that the muscular spasm, which he found, represented a pulling of the muscles in the back, which might explain the scoliosis, and that the abnormal temperature "could be" a factor in connection with the back complaint, but did not otherwise express an opinion as to causal relation between the incident of April 13, 1948, and the petitioner's condition.

Doctor Emmer examined the petitioner on April 23, 1949. He found scoliosis of the lower spine; forward flexion only to forty-five degrees, extension showing a loss of ten degrees, lateral flexion and rotation showing a loss of ten; straight leg raising on the right to sixty-five, on the left to seventy-five. In answer to a hypothetical question, he stated "it is quite possible that this condition is purely infectious, a chronic infectious process or a myositis." On cross-examination he stated that he meant to say probable instead of possible. He testified further, on cross-examination, that both the temperature and the episode of April 13, 1948, had to be considered as factors, and if the patient had no temperature over a period of time, the probability then would be that the episode was the probable factor in causing the injury. His estimate of disability was five per cent of total.

The appellant contends that the credible proofs establish that the petitioner suffered an accident on April 13, 1948, arising out of and in the course of his employment, and that

his back injury is directly attributable to the accident, and we agree. To establish a compensable injury by accident under our Workmen's Compensation Act, the petitioner must prove, by a preponderance of the evidence, that the accident arose (1) in the course of the employment and (2) out of the employment. *Seiken v. Todd Dry Dock, Inc.*, 2 *N. J.* 469 (1949). It is clear that the petitioner's injury arose in the course of the employment and we think that he has established, by a preponderance of the evidence, that it arose out of the employment.

The respondent contends that the essential issue is the credibility of the witnesses on the question whether the incident of April 13, 1948, occurred as described by the petitioner, and not whether the incident, if it occurred, constitutes an accident. He argues that since the Workmen's Compensation Division and the County Court both found that the petitioner had failed to carry the burden of proof of the alleged incident and there is evidence to support this finding, we should apply the rule that the concurring factual findings of the two lower tribunals, which have evidence to support them, will not be lightly disturbed by this court.

In this case we think the interests of justice require us to review the facts and make our independent finding thereon, *Rule* 3:81–13. The evidence relied upon by the respondent to support the finding below consists of the testimony of the plant nurse and the plant doctor, the X-rays showing a pre-existing congenital condition in the back, and the abnormal temperature of the petitioner. We give little weight to the testimony of the plant nurse concerning the conversation she had with the petitioner on April 13, 1948. This testimony was based upon her recollection of a happening thirteen months before. She admitted that she interviewed twenty-five or thirty employees daily and could not remember any conversations with any other employees on that date. Although she claimed that she remembered this conversation, she could not remember the petitioner's temperature, which she had taken on that day, and testified: "I had to

consult the record to know what the temperature was." The testimony of the plant doctor as to the incident of April 13, 1948, was purely negative, other than his admission that the petitioner did tell him that his pain started while he was on the job. The X-rays showed a pre-existing congenital malformation in the back, but the uncontradicted testimony was that the petitioner had never experienced any difficulty therefrom prior to the April, 1948, incident. While the petitioner had a slight temperature when first examined, and this temperature continued for several months, the etiology of the fever was never determined. In addition, the petitioner testified that he notified his foreman within ten minutes after the incident that he "got hurt on the job;" yet the foreman, who was available, was not called as a witness by the respondent. We conclude that the petitioner proved, by the preponderance of the evidence, that the incident of April 13, 1948, occurred as he described it.

The judgment is reversed and the cause is remanded to the Workmen's Compensation Division for a determination of the extent of the disability.